IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>COMMERCE AIR CONDITIONING CO., *et al.*, <br><br>Defendants. | ) ) ) ) ) ) ) Civil Action No. 1:15cv0408 (LMB/JFA) ) ) ) ) ) ) ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Docket no. 19). Plaintiffs are the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC") and they seek a default judgment against Commerce Air Conditioning Co. and Charles R. Walter ("Walter"), individually and doing business as Commerce Air Conditioning Company and Commerce Air Conditioning (collectively "Commerce"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all parties.

1

## Procedural Background

On March 25, 2015, the plaintiffs filed this action alleging that the defendants are obligated to pay them for certain overdue contributions, liquidated damages, interest, late charges, and attorney's fees and costs. (Docket no. 1). An alias summons and complaint were served on each of the defendants on July 22, 2015.[1] (Docket no. 15). In accordance with Federal Rule of Civil Procedure 12(a), a responsive pleading was due on August 12, 2015, which is 21 days after the defendants were served with the alias summons and complaint.

The defendants failed to file a responsive pleading in a timely manner and on August 14, 2015, the plaintiffs filed their request for entry of default. (Docket no. 16). The Clerk of Court entered default against the defendants pursuant to Federal Rule of Civil Procedure 55(a) on August 20, 2015. (Docket no. 17). On September 18, 2015, the plaintiffs filed a motion for default judgment with a supporting memorandum and declarations from Walter Shaw and Matthew T. Tokarsky and a notice of hearing for September 25, 2015 at 10:00 a.m. (Docket nos. 19–21). The motion for default judgment, supporting memorandum, and notice of hearing were served on the defendants by mail on September 18, 2015. (*Id.*). On September 25, 2015, counsel for the plaintiffs appeared at the hearing on the motion for default judgment and no one appeared on behalf of the defendants.

## Factual Background

The following facts are established by the complaint (Docket no. 1), the motion for default judgment (Docket no. 19), and the memorandum and declarations filed in support of the motion for default judgment (Docket no. 20).

---

[1] The undersigned previously found that the initial summonses were not served properly (Docket no. 13) and alias summonses were issued on June 30, 2015 (Docket no. 14).

NPF is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 4). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee pension benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (3). (Compl. ¶ 4). The NPF is administered in Fairfax, Virginia (Compl. ¶ 7).

ITI is the collective name of the trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 5). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 5). The ITI is administered in Fairfax, Virginia. (Compl. ¶ 7).

The NEMIC is a labor management committee established pursuant to the Labor Management Cooperation Act of 1978 and 29 U.S.C. § 186(c)(9) that is funded by contributions under collective bargaining agreements. (Compl. ¶ 8).

SMOHIT is the collective name of the trustees of the Sheet Metal Occupational Health Institute Trust, a trust established under 29 U.S.C. § 186(c)(5) that is a joint labor-management health and safety organization serving the sheet metal industry. (Compl. ¶ 9).

Commerce Air Conditioning Co. is an unincorporated business with offices in California and is an employer in an industry affecting commerce as defined by 29 U.S.C. § 152(2), (6), and (7) and 29 U.S.C. § 1002(5), (11), and (12). (Compl. ¶ 13). Commerce Air Conditioning Co.

does business with the plaintiffs in this district and a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred from transactions with the plaintiffs' offices in this district. (Compl. ¶ 14). Walter is an individual and the owner and sole proprietor of Commerce Air Conditioning Co. (Compl. ¶ 14). Commerce employs employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a Sheet Metal Workers' International Association and/or one or more of its affiliated local unions, which are labor organizations representing employees in an industry affecting interstate commerce (collectively, the "Union"). (Compl. ¶ 15). Commerce was a party to or agreed to be bound by the terms and conditions of a collective bargaining agreement with the Union (the "Labor Contract"). (Compl. ¶ 16). Commerce also entered into or agreed to be bound by the terms of the agreements and declarations of trust of NPF and ITI, (the "Trust Agreements") made between certain employers and employee representatives to promote stable and peaceful labor relations. (Compl. ¶ 17).

Under the Labor Contract, Trust Agreements, rules and regulations, and applicable law, Commerce agreed to make full and timely contributions to the plaintiffs on behalf of employees who were covered by those agreements; to file monthly remittance reports detailing all employees or work for which contributions were required; to produce, upon request, all books and records deemed necessary to conduct an audit of Commerce's records concerning its obligations to make payments to the plaintiffs; and to pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorney's fees, expended by the plaintiffs to collect any amounts due as a consequence of Commerce's failure to comply with its obligations detailed above. (Compl. ¶ 18). Plaintiffs allege that the payments due to each of them are calculated separately on monthly remittance reports that are required to be prepared by

each contributing employer. (Compl. ¶ 19). A completed report and payment must be submitted by the twentieth day of each month following the month in which the work was performed, and a payment is deemed delinquent if the payment and report are not received within that time period. (Compl. ¶ 20).

Under the Labor Contract, Trust Agreements, NPF Rules and Regulations, and other benefit plans, Commerce is required to pay the plaintiffs interest on any delinquent contributions at a rate of eight and one-half percent (8.5%) per annum; late charges of $50.00 for each month of contributions paid after the due date and before any lawsuit is filed or ten percent (10%) of the contributions due for those months; liquidated damages of twenty percent (20%) of the contributions that were unpaid on the date the lawsuit was filed; and all attorney's fees and costs incurred by the plaintiffs as a result of Commerce's failure to comply with its obligations. (Compl. ¶¶ 21, 22).

In Count I of the complaint, for Commerce's violation of 29 U.S.C. § 1145, the NPF and the ITI ("the ERISA Funds") seek a judgment in the amount of $8,221.01 in unpaid contributions during the period from January 2011 through February 2015, plus any additional amounts that become due and owing during the pendency of this litigation together with interest from the due date until the date of payment, liquidated damages, and reasonable attorney's fees and costs incurred in this action or the collection or enforcement of any judgment. (Compl. ¶¶ 26, 27; Ex. 2). In Count II of the complaint, for Commerce's breach of contract, all plaintiffs seek a judgment in the amount of $8,341.04 in unpaid contributions during the period from January 2011 through February 2015, plus any additional amounts that become due and owing during the pendency of this litigation, along with late charges, liquidated damages, interest, and attorney's fees and costs. (Compl. ¶¶ 30, 31; Ex. 2).

In the memorandum in support of plaintiffs' motion for default judgment, the ERISA Funds state that they are owed the amounts as detailed below under Count I for violations of 29 U.S.C. § 1145. (Docket no. 20; Ex. 5B).

| Plaintiff | Contributions | Interest through 9/18/2015 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| NPF | $6,254.30 | $752.90 | $1,250.85 | $4,394.32 | $12,652.37 |
| ITI | $225.96 | $28.71 | $45.19 | $0 | $299.86 |
| Total | $6,480.26 | $781.61 | $1,296.04 | $4,394.32 | $12,952.23 |

In the motion for default judgment, the plaintiffs (including NEMIC and SMOHIT) state that they are owed the amounts as detailed below under Count II for breach of contract. (Docket no. 20; Ex. 5A).[2]

| Plaintiff | Contributions | Interest through 9/18/2015 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| NPF | $6,254.30 | $752.90 | $1,250.85 | $4,394.32 | $12,652.37 |
| ITI | $225.96 | $28.71 | $45.19 | $0.00 | $299.86 |
| NEMIC | $56.49 | $7.15 | $11.30 | $0.00 | $74.94 |
| SMOHIT | $37.66 | $4.79 | $7.53 | $0.00 | $49.98 |
| Total | $6,574.41 | $793.55 | $1,314.87 | $4,394.32 | $13,077.15 |

**Proposed Findings and Recommendations**

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to

---

[2] There is a difference in the amounts sought in the motion for default judgment (Docket no. 20, Exs. 5A and 5B) and the complaint (Docket no. 1, Ex. 2) because in the complaint the interest is calculated only up to and including February 26, 2015, and the motion for default judgment contains an itemization of the attorney's fees and costs.

plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

### Jurisdiction and Venue

The plaintiffs allege that this court has subject matter jurisdiction under section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. (Compl. ¶ 1). Section 502 provides that the district courts of the United States have jurisdiction over civil actions brought under this title. This case is properly before the court under its federal question jurisdiction pursuant to 29 U.S.C. § 1132(e) because it is brought under ERISA for an alleged failure to make contributions in accordance with a collective bargaining agreement or multiemployer plan. The plaintiffs further allege that this court has subject matter jurisdiction under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Compl. ¶ 1). That section provides that United States district courts have jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. This case is also properly before the court pursuant to 29

U.S.C. § 185(a) because it is brought under the LMRA for violation of a contract between an employer and a labor organization.

Section 502 states that an action under this title may be brought in the "district where the plan is administered" and "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The plaintiffs state that the respective funds are administered in Fairfax, Virginia. (Compl. ¶ 7). On July 22, 2015, an alias summons and complaint were served on each of the defendants. (Docket no. 15). Venue is proper in this court and this court has personal jurisdiction over the defendants since the respective funds are administered within the Alexandria Division of the Eastern District of Virginia. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040 (E.D. Va. 1997) (personal jurisdiction in an ERISA action should be determined on the basis of the defendant's national contacts with the United States pursuant to the Due Process Clause of the Fifth Amendment and ERISA itself provides for nationwide service of process).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendants, and that venue is proper in this court.

### Grounds for Entry of Default

An alias summons and complaint were served on each of the defendants on July 22, 2015. (Docket no. 15). Under Federal Rule of Civil Procedure 12(a), a responsive pleading was due on August 12, 2015, which is 21 days after service of process on the defendants. After the defendants failed to file an answer or responsive pleading in a timely manner, the plaintiffs requested an entry of default on August 14, 2015. (Docket no. 16). As set forth in the request

for default, defendant Walter is not in military service, an infant, or incompetent. (*Id.*). The Clerk of Court entered a default on August 20, 2015. (Docket no. 17).

The undersigned magistrate judge recommends a finding that the defendants were served properly, that they failed to file a responsive pleading in a timely manner, and that the Clerk of Court properly entered a default as to the defendants.

## Liability and Measure of Damages

Rule 54(c) of the Federal Rules of Civil Procedure provides that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because the defendants did not file a responsive pleading and are in default, they admit the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

## Count I

As set forth in the complaint, Commerce failed to submit remittance reports and contributions to the ERISA Funds for the period from January 2011 through February 2015. (Compl. ¶ 26). 29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions in which a judgment in favor of the plan is awarded, the court shall award the plan:

>   (A) the unpaid contributions,
>   
>   (B) interest on the unpaid contributions,
>   
>   (C) an amount equal to the greater of --
>   
>   >   (i) interest on the unpaid contributions, or
>   >   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>   
>   (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In support of their claim for damages, plaintiffs submitted a declaration from Walter Shaw. (Docket no. 20, Ex. 1) ("Shaw Decl."). Mr. Shaw is the Manager of the Billing Department for the NPF and he is familiar with the payment histories of employers obligated to make contributions to each of the plaintiffs. (Shaw Decl. ¶ 1). The information contained in the declaration of Mr. Shaw and the Delinquency Calculation Summary attached as Exhibit 5B to the memorandum in support of the motion for default judgment establish that Commerce owes the ERISA Funds the following amounts:

| Plaintiff | Contributions | Interest through 9/18/2015 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| NPF | $6,254.30 | $752.90 | $1,250.85 | $4,394.32 | $12,652.37 |
| ITI | $225.96 | $28.71 | $45.19 | $0 | $299.86 |
| Total | $6,480.26 | $781.61 | $1,296.04 | $4,394.32 | $12,952.23 |

As set forth in the Shaw declaration, each of the ERISA Funds are owed unpaid contributions for the period February 2011 through January 2015; interest calculated at the rate established under 28 U.S.C. § 1961 on ERISA statutory liability from the date the payment was due through September 18, 2015; and liquidated damages on the contributions unpaid as of the commencement of the litigation calculated at a rate of 20% pursuant to 29 U.S.C. §§ 1145 and 1132(g)(2)(c). (Docket no. 20, Ex. 5B).

The NPF submitted a declaration from Matthew T. Tokarsky detailing the attorney's fees and costs incurred in this action. (Docket no. 20, Ex. 6) ("Tokarsky Decl."). The total

10

amount of the attorney's fees and costs incurred was $4,394.32. (Tokarsky Decl. ¶ 2). The $3,169.00 in attorney's fees is comprised of 17.2 hours of attorney and paralegal time. (Tokarsky Decl. Ex. 7). The amount of costs was $1,225.32, which is comprised of $259.95 for service fees, $400.00 for filing fee, $422.80 for computer research, $86.01 for postage and delivery charges, and $56.56 for photocopy fees. (*Id.*). The hourly rates charged for the attorney time was $220.00 and $195.00 and the hourly rate for the paralegals was $80.00. (Tokarsky Decl. ¶ 3). The undersigned magistrate judge has reviewed the declaration of Mr. Tokarsky and recommends a finding that the hourly rates charged and the costs incurred by the NPF are reasonable.[3] After reviewing the individual time entries, the court finds that the total amount of time incurred in pursuing this action and the amounts billed were reasonable.

For these reasons, the undersigned recommends that a default judgment be entered in favor of the NPF and the ITI, against Commerce on Count I of the complaint for violation of 29 U.S.C. § 1145 in total amount of $12,952.23 as detailed above.

**Count II**

In Count II, all plaintiffs allege that Commerce has not paid them as required by the Labor Contract. (Compl. ¶ 30). Plaintiffs claim that Commerce owes plaintiffs contributions, interest, liquidated damages, and late charges under the Labor Contract. (Compl. ¶ 31). Specifically, 29 U.S.C. § 185(a) provides that

---

[3] The Tokarsky declaration does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable hourly rate. While it includes exhibits indicating regional associate hourly billing rates and a survey of Ohio hourly billing rates from 2007, the relevant inquiry is whether the fees charged are comparable with the prevailing market rates of other local lawyers familiar both with the skills of the fee applicants and the type of work in the relevant community; here, Northern Virginia. *Plyler*, 902 F.2d at 278. However, since the defendants have not contested the hourly rates in this case, the court will accept the allegations set forth by the NPF concerning the reasonableness of those rates. The hourly rates and costs requested are consistent with the rates and costs incurred in similar cases and awarded by this court.

suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

As an initial matter, these plaintiffs have standing to seek relief for breach of contract under the LMRA as third-party beneficiaries of the collective bargaining agreement. *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, 2008 WL 4329294 at *5 (E.D. Va. Sept. 15, 2008) (citing *Bakery and Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021–22 (4th Cir. 1997)). In support of their claim for damages under the Labor Contract, the NEMIC and the SMOHIT rely upon the declaration of Walter Shaw and a Delinquency Calculation Summary, similar to that discussed in Count I, above. (Docket no. 20, Ex. 5A).

Under the breach of Labor Contract claim, Commerce owes the defendants the following amounts:

| *Plaintiff* | *Contributions* | *Interest through 9/18/2015* | *Liquidated Damages* | *Costs and Attorney's Fees* | *Total* |
|---|---|---|---|---|---|
| NPF | $6,254.30 | $752.90 | $1,250.85 | $4,394.32 | $12,652.37 |
| ITI | $225.96 | $28.71 | $45.19 | $0.00 | $299.86 |
| NEMIC | $56.49 | $7.15 | $11.30 | $0.00 | $74.94 |
| SMOHIT | $37.66 | $4.79 | $7.53 | $0.00 | $49.98 |
| **Total** | $6,574.41 | $793.55 | $1,314.87 | $4,394.32 | $13,077.15 |

As set forth in the Shaw declaration, these amounts include unpaid contributions for the months of February 2011 through January 2015; interest at a rate of 8.5% per annum from the date the payment was due through September 18, 2015 pursuant to the Labor Contract; and liquidated damages on the contributions unpaid at the commencement of litigation calculated at a rate of 20% (Docket no. 20, Ex. 5A). As in Count I, the NPF claims $4,394.32 in attorney's fees and costs under this count and they rely upon the declaration of Matthew T. Tokarsky in support of its claim for, and the reasonableness of, the attorney's fees and costs in this court. (Docket no. 20, Ex. 6). As discussed above, the undersigned magistrate judge has reviewed the declaration of Mr. Tokarsky along with the time entry and cost information submitted and recommends that an award of $4,394.32 is appropriate in this case.

For these reasons, the undersigned recommends that a default judgment be entered in favor of the plaintiffs against the defendants on Count II of the complaint for breach of contract in the total amount of $13,077.15 as detailed above.

The amounts that the NPF and the ITI seek in Count II include the amounts they seek in Count I. Those plaintiffs are only entitled to one recovery for the amounts sought. For that reason, the undersigned recommends a total judgment be entered against the defendants in the amount of **$13,077.15**.

## Conclusion

For the reasons stated above, the undersigned recommends that a judgment be entered in favor of the plaintiffs the Board of Trustees of the Sheet Metal Workers' National Pension Fund, the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry, the Sheet Metal Occupational Health Institute Trust, and the National Energy Management Institute Committee against defendants Commerce Air Conditioning Co.

and Charles R. Walter, jointly and severally, in the total amount of **$13,077.15**, which includes unpaid contributions of $6,574.41, interest of $793.55, liquated damages of $1,314.87, and legal fees and costs of $4,394.32.

### Notice

By means of the court's electronic filing system and by mailing a copy of the proposed findings of fact and recommendations to Commerce Air Conditioning Co., 14673 Parthenia Street, Suite 202, Panorama City, CA 91402, and to Charles R. Walter, 411 E. Grinnell Drive, Burbank, CA 91501, the parties are notified that objections to the proposed findings of fact and recommendations must be filed within fourteen (14) days of service of the proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on the proposed findings of fact and recommendations.

ENTERED this 28th day of September, 2015.

　　　　　　　　　　　　　　　　　　　　　/s/ JFA
　　　　　　　　　　　　　　　　　　　John F. Anderson
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Alexandria, Virginia